Filed 11/14/13  P. v. Quezada CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B246275 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA074479) |
| v. | |
| DELFINO QUEZADA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Beverly Reid O'Connell, Judge.  Affirmed.

Renée Paradis, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, Delfino Quezada, appeals from the judgment entered following a court trial which resulted in his conviction of the serious felony of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)),[1] during which he personally inflicted great bodily injury on the victim, not an accomplice to the offense (§ 12022.7, subd. (a)), and the court's findings he previously had been convicted of the serious felony of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)) within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and section 667, subdivision (a)(1), and had served a prison term for the offense pursuant to section 667.5, subdivision (b). The trial court sentenced Quezada to 12 years in prison. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*.

    a. *The prosecution's case*.

At approximately 1:30 in the afternoon on October 12, 2011, 65-year-old Raymondo Rosas was at the J and L Shoe Store on San Fernando Road. While Rosas was looking at shoes, 32-year-old Quezada and a family of customers were also trying on shoes. Rosas decided to purchase a pair and, after he did so, Quezada, who was standing behind Rosas, began to ridicule and insult Rosas "based on the shoes" Rosas had chosen to buy.

Rosas had never seen Quezada before. However, on the sidewalk just in front of the store, Quezada approached Rosas from behind and, after grabbing him by the shoulders, "pulled [him] to the [ground]." When Rosas fell, he hit his head on the sidewalk. Quezada then began to beat Rosas, hitting Rosas with his fists on the face and nose. Although Rosas attempted to "cover [him]self," Quezada "tore [Rosas's] nose up" and hit him in the eyes until they were "[b]lack and blue." Rosas "never threw a punch or tried to hit [Quezada] back."

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

While Rosas was on the ground and Quezada was still attacking him, police officers and an ambulance arrived. After an officer pulled Quezada off of Rosas, Rosas was transported to a hospital by the ambulance. There, hospital personnel examined Rosas and they determined Quezada had broken Rosas's nose and dislocated one of Rosas's fingers.[2]

San Fernando Police Detective Irwin Rosenberg was on patrol in his uniform and a marked car when, at approximately 1:30 p.m. on October 12, 2011, he received a call indicating there was a fight taking place between "two male subjects" in front of a shoe store on San Fernando Road. When the detective arrived at the store, he saw Rosas on the ground attempting to protect himself while Quezada was standing over Rosas, kicking him. Rosas was "bleeding profusely from the face" in the "area of his nose." Quezada, however, continued to attack him. When Rosenberg heard Quezada tell Rosas "he was going to kick [Rosas's] ass," the detective ordered Quezada to step back, away from Rosas. Rosenberg then quickly approached Quezada and detained him until, approximately two or three minutes later, other officers arrived at the scene.[3]

---

[2]   Rosas's medical records from October 12, 2011 were admitted into evidence. The records indicated Rosas had been admitted to Providence Holy Cross Medical Center where he was treated for a "left orbital fracture," a "nasal fracture," "blunt head trauma," and a "right 5th finger dislocation with reduction." In addition, Rosas had a "left eyebrow laceration" which was "irrigated with normal saline," then closed with "Dermabond." Rosas was prescribed Vicodin for pain and Keflex "to prophylax against infection." It was recommended he "have a wound check in 48 hours" and "follow up with an orthopedic and ENT specialist at LA County USC" Medical Center in 48 hours. If he suffered new or "worsening" symptoms before that time, he was to return to the Holy Cross Medical Center emergency room.

[3]   One of those officers was Officer Ayala. It was stipulated Officer Ayala's police report, which was determined to be "accurate as far as his observations, and what he heard on the date of this event," was admitted into evidence.

3

2. *Defense evidence*.

Quezada testified in his defense. He admitted having pled guilty to the felony of "assault with a deadly weapon, . . . a baseball bat," in case No. PA058268 on May 29, 2008.

With regard to the present incident, Quezada stated he was at J and L Shoe Store at approximately 1:30 p.m. on October 12, 2011. He had been to the store before and, on that occasion, was exchanging some shoes. After Quezada had been there for a time, he saw Rosas, whom he had never seen before, enter the store. Rosas grabbed a pair of shoes and, in Spanish, said "Punta—something about pulling a donkey's thing" or "dick." Rosas had picked up a pair of shoes and indicated he believed it had been made of "donkey dick leather." In response to Rosas's remarks, Quezada, who thought Rosas "smelled like semen," told him, " 'You smell.' " When a salesman then brought Quezada a pair of shoes, Quezada, referring to Rosas, told the salesman, " 'This guy smells like sperm, like semen. He's a gross man.' "

After hearing these remarks, Rosas became upset and, in English, called Quezada "a bitch." According to Quezada, Rosas told him, "I'm going to treat you like a bitch in prison. I'll abuse you." Quezada told Rosas to leave him alone, that he had his bible with him and he did not want to have any problems. At that point, Rosas left the store.

Quezada had exchanged his shoes, was wearing the new ones and was standing at the counter when Rosas returned to the shoe store. Rosas again began cursing at Quezada and calling him names. When a family then entered the store, they turned around and left when they heard Rosas "cussing and all that." At that point, the store owner, Emanuel Tapia, asked Quezada and Rosas to leave.

Rosas left, followed by Quezada. Quezada "left [his] books and things inside [the store] because [he] was going to go back inside and pick them up." However as he walked out onto the sidewalk behind Rosas, he asked Rosas what his problem was. Rosas turned around and "immediately start[ed] to hit [Quezada] in the face" with his fist. According to Quezada, Rosas hit him at least seven or eight times, "punching [him] left and right." When Rosas then put his hands down, Quezada punched Rosas in the

4

face, knocking him down onto his back. Although Quezada told Rosas not to get up and that Rosas did not know who he was "messing with," Quezada did not kick Rosas.

When Detective Rosenberg arrived, he got out of his patrol car, jumped over a brick wall surrounding a planter, held Quezada "from the back[,] . . . put[] [him] against [a] wall" and, although he had never seen Quezada before, told him, "Delfino, calm down." The detective then had Quezada sit and lean against the planter wall until paramedics had placed Rosas in an ambulance. By this time a second police officer, Ayala, had arrived at the scene. Ayala asked Quezada if he needed medical attention and Quezada told the officer he did not.[4] After Rosas was driven away in the ambulance, Detective Rosenberg placed Quezada under arrest.

Quezada indicated, at the time of trial, he was taking a number of medications including Thorazine, Risperdal, Benadryl and Cogentin. However, on October 12, 2011, he had not taken his medications. He was running out and had decided not to take them that day. Quezada has "problems memorizing and speaking sometimes" and he could not remember if, other than during their first encounter, Rosas had hit him. Quezada had not, however, had any contact with Rosas since the October 12th incident other than seeing him in court.

Although he has "short term memory loss," Quezada remembered speaking with Detective Rosenberg at the site of the encounter with Rosas. He also remembered speaking with another officer at the jail. Quezada did not, however, remember telling Detective Rosenberg he had grabbed Rosas by the shoulder. Quezada remembered telling an officer at the station Rosas had approached him " 'while [he] was at the store and called [him] a bitch.' " Quezada did not remember telling the officer he " 'felt embarrassed because [Rosas] called [him] a bitch,' " but did remember that he felt humiliated. Quezada did not tell a police officer that " 'when [Rosas] was walking out of the store, [he] approached [Rosas] from behind, grabbed his right shoulder and pushed

---

**4**      Quezada testified he had no problems with the San Fernando Police Department and he was acquainted with Officer Ayala.

[Rosas] to the ground[.]' " Quezada also never told Officer Ayala he " 'was holding [Rosas's] face against the ground and . . . was telling him to stay down.' " Not only did Quezada not tell Officer Ayala he held Rosas's face against the ground, he did not do so. Quezada also denied grabbing Rosas by the shoulders, using both hands to push him to the ground, then punching him or telling an officer he had done so. Quezada remembered "punching [Rosas] one time." Rosas "fell to the floor, got back up [then] fell again."

Quezada indicated that on October 12, 2011, he had been recovering from a fractured neck. On that day, he "hurt [himself] again" and suffered "scratches and hits to the body," including an area on his left shoulder as well as on both cheeks. When asked about Detective Rosenberg's testimony in which the Detective stated he saw Rosas on the ground attempting to defend himself while Quezada was standing "over him and kicking him and making what appeared to be insulting or threatening statements to him," Quezada stated Rosenberg's testimony had been "completely false."

Tapia owns a store named Jaiden Shoes and Western Wear, which formerly had been owned by Tapia's uncle. The store used to be called J and L Shoe, but Tapia had changed the name. Tapia was familiar with Quezada. He used to see Quezada assisting the owner of a beauty salon which had been next to a second store owned by Tapia's uncle.

At approximately 1:30 p.m. on October 12, 2011, Tapia had been working at his San Fernando store. Quezada came into the store, looking for some shoes. While Quezada was there, another customer, a man Tapia did not know, entered the store. After Quezada had picked out a pair of shoes and was putting them on, Tapia heard Quezada and the man who had entered the store speaking in raised voices. Tapia did not pay attention to what Quezada and the other man were saying because a woman and her young daughter had come into the store and he was assisting them. However, when his customer appeared to become concerned about the two men, Tapia approached them and asked them to "take it outside." After Tapia had finished helping his customer purchase a

6

pair of shoes, he looked outside and saw several police officers. He noted that Quezada and the other man had been "separated."

Tapia indicated he had known Quezada for some time and he understood that Quezada had "issues." Tapia knew that, at some point in time, Quezada had been homeless and had very little money. Quezada had asked Tapia if he could have the shoes, but pay for them at a later date. Since Tapia knew Quezada and considered him a friend, he had agreed to take payment for the shoes at a later time.

Tapia testified he had been required to close his store to come to court to testify. The prosecutor had then told Tapia he was entitled to witness fees, hoping the fees would help defray the cost Tapia was incurring by closing his store. Tapia, however, had been promised nothing else when he was told he was required to report to court to testify.

2. *Procedural history.*

Following a preliminary hearing, an information filed on September 21, 2012 charged Quezada with one count of the felony of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)), during the commission of which he personally inflicted great bodily injury upon the victim, Raymondo Rosas, not an accomplice to the offense (§ 12022.7, subd. (a)), which caused the offense to be a serious felony (§ 1192.7, subd. (c)(8)) and required any time in custody imposed for the offense to be served in state prison (§ 1170, subd. (h)(3)). It was further alleged Quezada had suffered a prior conviction for the serious felony of assault by means of force likely to produce great bodily injury in case No. PA058268 (§ 245, subd. (a)(1)), within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and section 667, subdivision (a)(1), and that he had served a prison term for the offense pursuant to section 667.5.

At proceedings held on October 1, 2012, Quezada waived arraignment, pled not guilty to the offense and denied all the additional allegations. On November 20, 2012, Quezada waived his right to a jury trial and indicated he wished to have the court try his case. After hearing all the testimony and considering all the evidence, on December 20, 2012 the trial court found Quezada guilty as charged. The court indicated, after

7

reviewing the factors referred to in CALCRIM No. 226, it had determined Rosas's testimony had been corroborated by that of Detective Rosenberg. In addition, the trial court found Quezada had inflicted great bodily injury "based on the medical records." With regard to the alleged prior conviction, the trial court stated it had "taken judicial notice of the court's files and records in case PA058268, under Evidence Code section 452" and considered Quezada's admissions. After doing so, the court found the People had met their burden of proving the prior conviction and related allegations true beyond a reasonable doubt.

After informing Quezada he had the right to be sentenced within 20 days of his conviction, the trial court asked Quezada if he was willing to waive that right and have his sentencing put over to January 17, 2013. Quezada responded, "Yes. Yes, Your Honor," and his counsel then joined in the waiver. The trial court set Quezada's sentencing for January 17 and informed counsel it was "going to want to hear about mental health treatment [at that time]."

At proceedings held on January 17, 2013, defense counsel indicated he believed imposition of a term in prison for Quezada's prior with regard to both the Three Strikes law and section 667.5 amounted to improper dual use of the conviction. The trial court agreed, then asked defense counsel to indicate what he believed the sentence should be. Counsel indicated Quezada was "in a bad position" in that his strike was just a few years old. Counsel, however, then indicated that "the one thing that glare[d] out at [him] in this case [was] the fact that . . . Mr. Quezada ha[d] a mental health issue, a severe mental health issue . . . ." Quezada had "been in a mental health facility at each of the facilities he'[d] gone to." After indicating the People had, at one point, offered Quezada a term of nine years, defense counsel asserted he "hope[d] the court [would] take into consideration [Quezada's] mental health problems and would confine the sentence to an area [close to the People's] last offer . . . ."

The prosecutor indicated he recognized there existed mental health issues. He stated, however, "[w]hen [he went] over . . . [Quezada's] record, [he was] just always struck at how much violence there [was], how much of a threat [Quezada] is to the

8

public." The prosecutor stated he recognized the violence was "motivated by mental health issues, but [also recognized] it just keeps happening." Under these circumstances, the prosecutor indicated, in order to properly protect the public, a term of at least 14 years in prison was justified.

When Quezada personally addressed the trial court, he indicated he believed Rosas had been the aggressor in this incident. Quezada continued: "And I have in my past been beaten. I have been, you know, my family beat me a lot, and I am schizophrenic where if I feel like somebody is going to attack me, I defend myself. [¶] And I don't know, it's— people always picking on me, and sometimes I don't even know what to do, but I don't know how to explain myself."

The trial court sentenced Quezada to the low term of two years in prison for the substantive offense "based upon the mental health issues." The court then doubled the term to four years pursuant to the Three Strikes law, imposed a term of three years for the infliction of great bodily injury and a term of five years for the prior serious felony alleged pursuant to section 667, subdivision (a). In total, the court sentenced Quezada to 12 years in prison. The trial court then recommended Quezada "be housed in a mental health treatment facility where [he could receive] appropriate mental health treatment."

The trial court awarded Quezada presentence custody credit for 233 days actually served and 35 days of good time/work time, for a total of 268 days. In addition, Quezada was entitled to credit for 231 days spent in Patton State Hospital, for presentence custody credit totaling 499 days. The trial court then imposed a $240 restitution fine (§ 1202.4, subd. (b)), a suspended $240 parole revocation restitution fine (§ 1202.45), a $40 court security fee (§ 1465.8, subd. (a)) and a $30 criminal conviction fee (Gov. Code, § 70373). With regard to restitution, Quezada waived his appearance and indicated his counsel could represent him at any hearing held on the matter.

Quezada filed a timely notice of appeal from the judgment on January 17, 2013.

9

## CONTENTIONS

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record.

By notice filed September 20, 2013, the clerk of this court advised Quezada to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. On October 31, 2013, Quezada filed with the court a document in which he appears to be asserting he did not receive a fair trial. A review of the record indicates otherwise. Quezada's counsel presented a full and comprehensive defense to the alleged charges and Quezada was properly sentenced.

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel had complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


CROSKEY, J.


ALDRICH, J.